**Jerome G. KIRCHER, O.F.M., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 694–81 T.

United States Claims Court.

May 24, 1988.

James J. Ryan, Cincinnati, Ohio, for plaintiff. Karen Ann Rolcik, and Taft, Stettinius and Hollister, Cincinnati, Ohio, of counsel.

Allan Lewis, with whom were Acting Asst. Atty. Gen. William S. Rose, Jr., Mildred L. Seidman, and Gerald B. Leedom, Dept. of Justice, Washington, D.C., for defendant.

## ORDER

WIESE, Judge.

### (i) GRANTING DEFENDANT'S CROSS–MOTION

### FOR SUMMARY JUDGMENT

and

### (ii) DIRECTING ENTRY OF JUDGMENT DISMISSING

### THE COMPLAINT

Plaintiff is a Franciscan priest who served during 1978 as the Roman Catholic chaplain at the National Leprosarium of the United States Department of Health, Education and Welfare in Carville, Louisiana ("the hospital"). He is a member of the Franciscan Order, a tax-exempt religious organization, to which he is bound by vows of poverty, chastity and obedience. The question at issue in this tax refund suit is whether the income which plaintiff received for his chaplaincy services is taxable

to him in his individual capacity or is, instead, the tax-exempt income of his Order. The case is before the court on cross-motions for summary judgment; we hold for the Government.

## I

Essentially the same question that is raised here was before the court in *Fogarty v. United States*, 6 Cl.Ct. 612 (1984), *aff'd* 780 F.2d 1005 (Fed.Cir.1986) and was there decided in the Government's favor. That case is controlling.

The Reverend Fogarty was a Roman Catholic priest who, like the present plaintiff, was tied to his Order (the Society of Jesus) by vows of poverty, chastity and obedience. Upon the approval by his religious superior, Reverend Fogarty accepted a teaching assignment at a secular institution (the University of Virginia) and, while serving in this capacity, was paid by and supervised by the University. The University, though it was aware of Reverend Fogarty's relationship with his Order, had concluded no agreement with the Order.

Based on these facts, the court held that the compensation paid Reverend Fogarty by the University was earned by him in his individual capacity and not as an agent of his Order. The Claims Court opinion, quoted with approval by the court of appeals, explained the conclusion this way:

> The University extended its invitation for interview to plaintiff, not to his Order. The University concluded its employment agreement with plaintiff, not with his Order. The University paid wages for the services received to plaintiff, not to his Order. And finally, it was the University that exercised administrative control over plaintiff's duties as a professor, not his Order.
>
> Given these considerations, there is no case here for saying that the University dealt with plaintiff as a representative acting in behalf of his Society. The few relevant facts are consistent with only one view: that plaintiff was asked to speak for himself and did so. Nothing in the facts would permit the court to say that either side demonstrated an inten-

tion to include the Maryland Province of the Society of Jesus as a party to the contract, much less that such a purpose had, in fact, been accomplished.

6 Cl.Ct. at 616, 780 F.2d at 1008, 1013.

In this case, as in *Fogarty*, we deal with a member of a religious Order who was hired by, paid by, and was held accountable to a third-party employer. Yet it is argued that this case is distinguishable and calls for a different result.

Plaintiff's argument begins with the proposition that, in accepting the professorship with the University of Virginia, the Reverend Fogarty stepped outside of the traditional boundaries of his Order (confined, plaintiff maintains, to teaching at a church-affiliated institution) and thus his employment could not be viewed as the employment of an agent. Father Fogarty was acting, if you will, on his own behalf and not in the pursuit of his Order's affairs. Father Kircher, by contrast, was employed as a priest in a leper hospital, a role that we are told accords with the historical ministry of the Franciscans, that being to offer spiritual guidance and comfort to the afflicted.

Thus, says plaintiff, the fact that he was employed in his individual capacity does not defeat the representative nature of his undertaking. What counts is that, in the performance of his duties, he was fulfilling the traditional ministry of his Order and was rendering services—sacerdotal duties —the content and efficacy of which lay largely beyond secular control, *i.e.*, were dependent upon ecclesiastical endorsement. In short, the argument is that his was a dual agency—he served in behalf of the Order while serving the hospital. Hence the income received is the income of his Order.

We are not persuaded by his argument. Tax jurisprudence dictates that income is to be taxed to the person who earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1213, 93 L.Ed. 1659 (1949). Thus, the question here comes down to this: to whom did the third party look for the satisfactory per-

formance of the services at issue—to plaintiff in his individual capacity or to plaintiff in his representative capacity, *i.e.,* to his Order?

The facts leave no room for debate: all relevant aspects of the employment relationship centered on plaintiff individually and not his Order. It was plaintiff whom the hospital hired (plaintiff signed the oath of office in his individual name); it was plaintiff whom the hospital paid (the hospital refused requests that compensation be paid in the name of the Order); and it was plaintiff whom the hospital supervised (the hospital provided the framework within which plaintiff conducted his priestly duties and determined the manner and scope of those additional duties not related to the conduct of religious rites or ceremonies).

■ Given these incidents of the employment relationship, it follows that plaintiff, and not his Order, held the right to the compensation due upon performance of the services; hence it is plaintiff to whom the compensation is to be taxed. The fact that plaintiff had an obligation to turn the money over to his Order does not change the analysis. That obligation flows from his membership in the Order; it is an obligation that stands independent of the employment relationship.

Plaintiff attempts to overcome the conclusion we draw from the facts by contending that an agent's status is not extinguished merely because a third party has failed to recognize it. Rather, says plaintiff, "[t]hird party recognition of the agency relationship has only to do with whether the third party may hold the principal, agent, or both, liable on a contract. Third party recognition has nothing to do with the existence of the agency relationship."

The statement, though true as a general matter, has nothing to do with the facts of this case. To the contrary, the rule that suits this case is the one which declares that "[i]f it is agreed that the other party deals solely with the agent, the principal does not become a party to the transaction...." *Restatement (Second) of Agency,* § 147 comment b (1958). The facts of this case make clear that the exclusion of the Order from the employment relationship between plaintiff and the hospital was a matter of design, not inadvertence. That intention controls.

## II

Consistent with the foregoing analysis, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and the complaint shall be dismissed.

IT IS SO ORDERED.